Tom Jones v. The State.

No. 5537.  Decided January 14, 1920.

**Causing Cattle, etc., to go Within the Enclosed Lands of Another—Insufficiency of the Evidence—Want of Consent.**

Where, upon trial of knowingly causing .cattle, mules and horses to go within the enclosed land of a certain party named in the information without his consent, the proof developed that several parties were joint owners of said land or in lawful possession thereof, the information should have alleged a want of consent of the other owners or possessor thereof; besides, it appeared from the evidence that defendant had authority from his landlord to turn the stock in the enclosure, etc., the conviction cannot be sustained.

Appeal from the County Court of Fisher.  Tried below before the Hon. W. C. Martin judge.

Appeal from a conviction of knowingly causing cattle, mules, and horses to go within the enclosed lands of another; penalty, a fine of ten dollars.

The opinion states the case.

No brief on file for appellant.

*Alvin M. Owsley*, Assistant Attorney General, for the State.—On question of ownership and possession:  Pate v. State, 46 Texas Crim. Rep., 483.

DAVIDSON, Presiding Judge.—The complaint and information charge that appellant did knowingly cause cattle and mules and horses to go within the enclosed lands of J. N. Thomas without the consent of said Thomas.

Briefly stated, the evidence is to the effect that appellant rented 250 acres of land from Dr. Pardue.  This was all in one enclosure. There was also twenty acres in the enclosure rented from Dr. Pardue by a witness named Cutbirth.  Appellant, ascertaining that he would be unable to cultivate the 250 acres, with permission of Dr. Pardue rented twenty-five or thirty acres to Thomas, prosecuting witness.  On account of the very severe and continued drouth practically no crops were raised.  Thomas said he did raise a little maize, most of which he hauled away and fed to his stock.  That he also had a small amount of indifferent maize and some weeds that he cut and piled, which was rather insignificant both in quantity and quality.  The evidence also shows that the rental contract was based upon shares of the crop.  Dr. Pardue was to get one-third and Thomas two-thirds.  He did not turn over any of Dr. Pardue's part but says he left his part of the crop standing.  In October, Thomas testified, appellant notified him he was going to

turn his stock in and wanted him to get whatever crop he had left hauled out. What Thomas had left was a small amount of indifferent maize and weeds that had been raked together. Thomas says this was not valuable, but was worth something. His claim is that appellant's stock ate this. Appellant's testimony shows that he informed Thomas on the 2nd of November and corroborated by other witness that he was going to turn his stock in; that he had permission from Dr. Pardue to do so. Thomas testified as to the conversation, but places it on the 12th of October. Dr. Pardue did give permission to appellant to turn his stock in the enclosure. Cutbirth testified he did not raise anything, and, therefore, did not pay Dr. Pardue any rent. Dr. Pardue testifies that none of them paid him anything; that he did not expect any as they raised nothing.

Appellant's contention is that the complaint and information should have alleged a want of consent of the other renters or possessors of the land in the enclosure. We are of opinion that appellant's contention under this proposition is correct. Dr. Pardue was joint owner with Thomas in the crops by reason of the rental contract, as he was with the defendant and also Cutbirth. Dr. Pardue was the real owner of the property, and joint owner of the crops, and was entitled to his pro rata share, and to that extent he was owner of the crop as much so as were his tenants.

We are also of opinion that the evidence does not support the conviction inasmuch as appellant had authority from Dr. Pardue to turn his stock in the enclosure. It might be mentioned in this connection also that Thomas, the prosecuting witness, permitted his cattle to run in the enclosure, and also a mule that he worked ran in the enclosure. Dr. Pardue drove Thomas' cattle from the enclosure to his house. Thomas was absent, but he says Mrs. Thomas used such vigorous language towards him with reference to the matter he did not care to repeat it to the jury.

Under these circumstances we are of opinion this judgment ought not to be affirmed: it is, therefore, ordered to be reversed and the cause remanded.

*Reversed and remanded.*